UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL IVESTER,<br><br>    Plaintiff,<br><br>v.<br><br>DONNA SWEENY et al.,<br><br>    Defendant. | Civ. No. 19-16559 (FLW) (DEA)<br><br>OPINION |

**FREDA L. WOLFSON, Chief U.S.D.J.**

Plaintiff, Michael Ivester ("Ivester" or "Plaintiff"), is proceeding *pro se* with an Amended Complaint asserting violations of his civil rights under 42 U.S.C. § 1983. For the reasons explained herein, the Court dismisses the Amended Complaint in its entirety pursuant to its screening authority under 28 U.S.C. § 1915(e)(2)(B).

I.     **BACKGROUND AND PROCEDURAL HISTORY**

    a.   **The Amended Complaint**

Ivester alleges that he is an Oregon resident serving a sentence imposed by the courts of the State of Oregon, but he is presently incarcerated at New Jersey State Prison ("NJSP"), in Trenton, New Jersey, under the Interstate Corrections Compact ("ICC"). *See* ECF No. 7, Amended Complaint ("Am. Compl.") at 2-3. Plaintiff has sued Defendants in New Jersey, Oregon, and Iowa in connection with his efforts to challenge his Iowa conviction, which was entered on or about December 3, 2015. *See generally*, Am. Compl.

Plaintiff alleges that although he has been transferred to prisons in different states, he has been serving an Oregon state sentence throughout the relevant time periods set forth in his

Amended Complaint. Am. Compl. at 11. In November 2014, Ivester was transferred from Oregon to a facility in Iowa, the Iowa Medical and Classification Center ("IMCC"). *Id.* at 14. Ivester alleges that in November 2014 he "was accused of assaulting an inmate and a staff member at the IMCC" and that he "was kept in solitary for approximately fif[]teen months while awaiting the final disposition of his pending felony charges." *See id.* Ivester contends that while he was in solitary confinement, Greg Ort, Acting Deputy Warden at IMCC, directed corrections officers to abuse and harass Plaintiff. *Id.* The abuse included name-calling, placing Plaintiff on strip cell status, confiscating Plaintiff's legal materials and clothes, denying Plaintiff, use of the law library for research, denying telephone privileges, and destroying his incoming mail. *Id.* at 15. Defendant Ort allegedly instructed his subordinates to confiscate Plaintiff's legal work and research related to the felony charges in Iowa, and Plaintiff was unable to communicate with attorney, and thus was unable to formulate a defense to the felony charges. *Id.* at 15-16.

Plaintiff was convicted of the Iowa charges and was sentenced on December 3, 2015. Am. Compl. at 14, 16. Plaintiff alleges he was "unexpectedly" transferred to NJSP 80 days after his sentencing on the Iowa charges. *Id.* at 14, 16, 17.

Plaintiff received a twenty-five year sentence on the Iowa charges. *See id.* at 16. Plaintiff alleges that he would have received a lower sentence if he had the ability to conduct legal research prior to and during his trial. *Id.* Plaintiff also alleges that he made "numerous requests" to Greg Ort to appeal his Iowa sentence, but Ort would not let him contact his public defender, conduct legal research, or provide him with the addresses of the court that imposed the Iowa sentence. *Id.* Ort also allegedly instructed segregation housing officers not to provide Plaintiff with paper or writing materials or his property, including legal materials. In the days following his sentencing, Plaintiff

> made numerous written and verbal requests to [Deputy Warden] Greg Ort pleading for the opportunity to contact his public defender, pleading for legal work containing the sentencing court[']s address and pleading for access to Iowa state law, case law, forms and other related materials, and on every occasion Greg Ort laughed at the plaintiff and told him "fuck you" and "go fuck yourself." Greg Ort told the plaintiff he would "never get shit."

*Id.* at 16. Plaintiff alleges in his Amended Complaint that he intended to appeal his conviction based on interference with his communication with his attorney and based on his inability to possess his own legal work, which prevented him from formulating his defense.[1] *Id.* at 17.

Ivester recounts that, after he was transferred to NJSP on or about February 20, 2016, he began what he calls "a fruitless journey to gain access to Iowa state law and research assistance with Iowa state law." *Id.* at 17. Plaintiff contends he was denied "procedural protections" guaranteed by the Fourteenth Amendment and that he has not been notified as to why he is being denied the right to file a direct appeal, petition for postconviction relief, and/or a habeas petition. *Id.* at 18. Upon his arrival at NJSP, Plaintiff began to ask "unit staff how to go about getting case law, addresses to Iowa state courts, so that he may file his direct appeal." *Id.* at 18. He alleges that, despite his repeated requests to the law library, classification, and administrative department, he has received no access to Iowa legal materials and was unable to determine who is responsible for handling this type of request. *Id.* Plaintiff also alleges that he filed and exhausted numerous grievances regarding the denial of Iowa legal materials. *Id.*

Plaintiff alleges that he received three responses to his requests from the NJSP law library, but Plaintiff characterizes them as "nonsense." *Id.* Unidentified law library personnel told Plaintiff: "In order to secure Iowa case law, you should write to the Public Defender's Office in Iowa or write to Oregon requesting same." *Id.* at 19. Although Plaintiff did not have an

---

[1] In his prior Complaint, Plaintiff did not allege any facts about the issues he sought to raise on direct appeal or in a petition for postconviction relief.

appointed attorney, law library personnel also told him that "Inmates are not allowed to give anything to their attorneys for retention. You can send out what your attorney needs by way of legal mail." *Id.* at 19-20.

Plaintiff also alleges he wrote six letters to the Commissioner at NJSP, who is responsible for promulgating policies and procedures at NJSP, but he received no response.[2] *See id.* at 21.

After Plaintiff was unsuccessful obtaining assistance at NJSP, he allegedly sent out numerous handwritten letters to K. Williams, the interstate compact coordinator in Oregon, requesting access to Iowa state law and research about out of time appeals, but she failed to respond. *Id.* at 20. Plaintiff also sent a letter to Karin Zeh, and the law librarian at Plaintiff's previous institution in Oregon, and also received no response. *Id.*

Plaintiff also sent 10 letters to Mike Brown, the Interstate Corrections Compact Coordinator in Iowa, asking for Iowa state law, caselaw, and research material, but received no response. *See id.* at 21. Plaintiff sent three letters to the law librarian at IMCC, and also received no response. *Id.* at 21.

Plaintiff has sued Defendants in three states. In New Jersey, he has sued Donna Sweeney, a Supervising Administrative Analyst, "who Plaintiff has been told to contact" about obtaining an out of state transfer. *See id.* at 3. Plaintiff has also sued Glenda Striblings, title unknown, who coordinates out of state transfers for New Jersey. *Id.* Plaintiff has also sued the Bruce Davis, the Administrator of New Jersey State Prison, who is responsible for day-to-day operations of the prison, Marcus O. Hicks, the Acting Commissioner for New Jersey State Prison, who is responsible for ensuring that polices are followed by subordinates, including the

---

[2] It is not clear if Plaintiff wrote to the current or former Commissioner or both.

Warden. *Id.* at 3-4. Plaintiff has sued Gary Lanigan, the prior Commissioner of New Jersey State Prison as well.

In Oregon, Plaintiff has sued K. Williams, the Interstate Compact Coordinator for the Oregon State Department of Corrections, who is responsible for interstate transfers, as well as William's supervisor Karen Zeh. Both Williams and Zeh allegedly failed to respond to Plaintiff's letters. Ivester has also sued Zeh's supervisor, Greg Jones. *Id.* at 4-5. Plaintiff has also sued John Doe Oregon Defendants, including the Director of the Oregon Department of Corrections, and the wardens of Snake River Correctional Institution and East Oregon Correctional Institution. *Id.* at 5.

In Iowa, Plaintiff has sued Greg Ort, the Deputy Warden of the Iowa Medical and Classification Center, who was the Acting Warden at the time Plaintiff was housed there. *See id.* at 6. As described above, Ort allegedly denied Plaintiff access to his attorney and research materials during his trial and would not allow him to file an appeal.[3] Plaintiff has also sued Mike Brown, the Interstate Compact Coordinator for State of Iowa, who is responsible for interstate transfers to and from Iowa Department of Corrections, *See id.* at 6. As described above, Brown failed to respond to Plaintiff's letters. Plaintiff has also sued John Doe Defendants in Iowa, including the Director of Operations for the Iowa Department of Corrections and the Warden of the Iowa Medical and Classification Center. *Id.*

Plaintiff has sued all Defendants in their official capacities for injunctive relief only. The only relief Plaintiff seeks in his Amended Complaint is to be transferred to Iowa where he believes he can access caselaw, legal research, and court information he needs to challenge his 2015 Iowa state conviction.

---

[3] In his Complaint, Plaintiff alleges that the denial of access to the courts is a continuing violation that warrants tolling of the statute of limitations. *See id.* at 22-23.

### b. Procedural History

Ivester submitted his original Complaint for filing on or about July 16, 2019. ECF No. 1. Complaint at 26. The Court dismissed the Complaint in its entirety pursuant to its screening authority under 28 U.S.C. § 1915(e)(2)(B), and provided Plaintiff with leave to amend. ECF Nos. 5-6. Plaintiff subsequently filed an Amended Complaint, ECF No. 7, which is subject to screening by this Court.

## II.  STANDARD OF REVIEW

Under the Prison Litigation Reform Act, Pub. L. 104-134, §§ 801–810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review prisoner complaints when the prisoner is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,'" the Court will accept the facts alleged in the pro se complaint as true, "'draw[ ] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, ... contains facts sufficient to state a plausible [ ] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (first, third, and fourth alterations in original) (quoting *Perez v.*

*Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations, however, do not suffice. *Iqbal*, 556 U.S. at 678.

As Ivester is proceeding pro se, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  "This means [courts] remain flexible, especially 'when dealing with imprisoned pro se litigants....'" *Id.* (quoting *Mala*, 704 F.3d at 244).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 244.)  However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

### III.   DISCUSSION

#### a.   Timeliness of Plaintiff's Claims Against Greg Ort

The Court construes Plaintiff to assert Sixth Amendment claims of denial of access to his attorney and First and Fourteenth Amendment claims of denial of access to the courts against Greg Ort.  This Court previously dismissed Plaintiff's § 1983 claims against Greg Ort on the basis of timeliness and first considers whether Plaintiff's Amended Complaint cures the deficiencies in his claims against this Defendant.

"Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim." *Ostuni v. Wa Wa's Mart,* 532 F. App'x 110, 111–12 (3d Cir. 2013); *see also Hunterson v. Disabato,* 244 F. App'x 455, 457 (3d Cir. 2007) ("[A] district court may *sua sponte* dismiss a claim as time-barred under 28 U.S.C. § 1915A(b)(l) where it is apparent from the complaint that the applicable statute of limitations has run.").

The Court received Ivester's Complaint on August 12, 2019, but, giving him the benefit of the "prison mailbox rule," *see Houston v. Lack*, 487 U.S. 266, 270–71 (1988),[4] the Court assumes that it may have been "filed" as early as July 16, 2019, the date Plaintiff signed the Complaint. Thus, any claims subject to a two-year statute of limitations are facially untimely if they accrued before July 16, 2017. Ivester was transferred from IMCC to NJSP in February 2016. As the Court explained in its prior opinion, any claims arising directly from his time in Iowa appears facially untimely. The Court dismissed these claims as untimely and permitted Plaintiff to raise arguments for tolling in his amended complaint.

The state statute of limitations and tolling rules generally govern § 1983 suits in federal court. *See Board of Regents v. Tomanio*, 446 U.S. 478 (1980). "[A] § 1983 claim is governed by the statute of limitations that applies to personal injury tort claims in the state in which such a claim arises." *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir.2009). Additionally, a state's tolling principles also govern § 1983 claims when they do not conflict with federal law. *Id.* In Iowa, there is a two-year limitations period that applies to personal injury claims and to § 1983 claims. *DeVries v. Driesen*, 766 F.3d 922, 923 (2014). Here, because Greg Ort's alleged misconduct occurred entirely in Iowa, the Iowa two-year personal injury tort statute of limitations applies. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007) (statute of limitations for personal-injury torts in state where cause of action arose applies in § 1983 actions; § 1983 action accrues when plaintiff has a complete and present cause of action); Iowa Code Ann. § 614.1 (Westlaw 2022).

---

[4] In *Houston v. Lack*, 487 U.S. 266, the Supreme Court held that a document submitted to the Court by a *pro se* prisoner litigant should be deemed filed not when stamped received by the Clerk's office, but instead "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk." *Id.* at 275–76. In this case, as Ivester dated each page of his Complaint as July 16, 2019, I proceed on the assumption that this date also represents the earliest possible time that the Complaint could have been given to prison authorities for mailing.

Although state law establishes the statute of limitations for § 1983 actions, federal law controls the issue of when the statute of limitations begins to run. *Wallace*, 549 U.S. at 388. The standard rule is that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief. *Id*. Under that rule, the tort cause of action accrues, and the statute of limitations commences to run, when the plaintiff knew or should have known of the injury that forms the basis of the claim. *Id.* at 391; *see also Wisniewski v. Fisher*, 857 F.3d 152, 157–58 (3d Cir. 2017); *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).

In his Amended Complaint, Plaintiff alleges that his denial of access to the courts began in Iowa where Defendant Ort denied him access to his counsel during his criminal trial and denied him the ability to file an appeal of his criminal conviction during the 80 day period after he was sentenced on December 3, 2015. Plaintiff was transferred to New Jersey on or about February 20, 2016. Plaintiff contends that New Jersey officials continued to deny him access to the courts by failing to respond to his inquiries about filing an appeal and suggesting that he contact Oregon and/or the Iowa Public Defender to access Iowa caselaw and research materials. Plaintiff also alleges that he wrote numerous letters to the Oregon Defendants, but they failed to respond.

Here, Plaintiff attempts to frame his access to the courts claim as a continuing violation to avoid the statute of limitations as to his claims against Greg Ort. The Eighth Circuit has applied the continuing violations doctrine under limited circumstances to § 1983 claims for Eighth Amendment violations. *See Montin v. Estate of Johnson*, 636 F.3d 409, 416 (8th Cir. 2011) (continuing violation could be found when plaintiff alleged that he "suffer[ed] daily and unconstitutional restrictions on his liberty of movement"); *Turner v. Palmer*, 84 F.Supp.3d 880,

9

886 (S.D. Iowa, 2015) (applying continuing violations doctrine where the Plaintiff alleged "systemic and excessive use of isolation cells at [the Iowa Juvenile Home]" and that she "spent numerous consecutive weeks in cemented small isolation cells"). As explained by the Eighth Circuit, the continuing violation may apply where "it is appropriate to describe each new day under an objected-to policy as comprising a new or continuing violation of rights, as in the context of an Eighth Amendment claim for cruel or unusual punishment or a discrimination claim alleging ongoing implementation of a discriminatory wage scheme." *Montin*, 636 F.3d at 415.

The Third Circuit has also applied continuing violation under similar circumstances. "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful ... practice and that at least one act falls within the applicable limitations period." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165–66 (3d Cir. 2013) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)). "[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991); *see also Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001).

The Third Circuit has identified at least three factors relevant to analyzing a continuing violation claim:

> (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and

> whether the consequences of the act would continue even in the
> absence of a continuing intent to discriminate.

*Cowell*, 263 F.3d at 292.  It is well-established that the continuing violation doctrine does not apply, however, when the plaintiff "is aware of the injury at the time it occurred." *Montanez v. Secretary Pennsylvania Dept. of Corrections*, 773 F.3d 472, 481 (3d Cir. 2014)) (finding that Montañez was aware of the relevant injury—the government seizure of funds from his inmate account—very shortly after it occurred but failed to assert his rights in a timely fashion). *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n. 6 (3d Cir. 2003)

Here,  Plaintiff was aware that 1) Defendant Ort denied him access to his attorney during his trial and 2) denied him the right to appeal at the time those wrongs occurred.  Eighty days later, Ivester was transferred to New Jersey, and Plaintiff provides no reasons why he could not have initiated his access to the courts lawsuit prior to the expiration of the two-year statute of limitations, even if the Court calculates that period of time from the date of his transfer, *i.e.*, February 2016.  Instead, for over 40 months, Plaintiff delayed filing his access to the courts claims in an apparently fruitless effort to obtain Iowa case law and research materials.

Put another way, Defendant Greg Ort's actions in actively and intentionally denying Plaintiff access to his attorney and denying him the ability to file his direct appeal after his sentencing "had a degree of permanence which should trigger [plaintiff's] awareness of and duty to assert his[ ] rights." *Wisniewski v. Fisher*, 857 F.3d at 158 (3d Cir. 2017) (finding that continuing violations doctrine did not apply to inmate's § 1983 First Amendment retaliation claim against employees and officials at correctional institution where he was housed) (citing *Cowell*, 263 F.3d at 292).  Here, the Court finds that neither the Eighth Circuit nor the Third Circuit would apply the continuing violations doctrine to toll Plaintiff's limitations period on the

claims against Defendant Ort beyond February 20, 2016, the date of his transfer to NJSP. Because Plaintiff needed to file his § 1983 claims against Ort by February 2018, his claims against Defendant Ort for denial of access to his attorney and to the courts are dismissed with prejudice as untimely.

### b. Access to the Courts Claims against the remaining New Jersey, Oregon, and Iowa Defendants

Plaintiff also seeks to bring First and Fourteenth Amendment access to the courts claim against New Jersey, Oregon, and Iowa Defendants for failing to provide him with Iowa caselaw, legal research, and court addresses so he could file a direct appeal or a PCR petition challenging his Iowa conviction.

The court notes that Plaintiff has sued the New Jersey, Iowa, and Oregon Defendants in their official capacities for prospective injunctive relief.[5] The only relief Ivester seeks is to have Defendants transfer him to Iowa, purportedly so he can have access to Iowa legal materials and court addresses. It is well established that an inmate has a constitutional right of meaningful access to the courts, which incorporates a right of access to legal reference materials. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821–28 (1977). The constitutional right of access to the courts arises from the Petition Clause of the First

---

[5] A claim against a public officer in her or his official capacity is essentially a claim against the governmental entity that employs the official. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Because a suit against a state official is in essence a suit against the state, Eleventh Amendment sovereign immunity also protects state employees from suit in federal court, subject to a narrow exception. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010). The Eleventh Amendment is no bar to "federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to end a continuing violation of federal law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996); *see also Ex parte Young*, 209 U.S. 123, 159–60 (1908). Although claims seeking prospective injunctive relief are permitted, claims that act as a remedy for past violations are barred under the Eleventh Amendment. *Seminole Tribe*, 517 U.S. at 73.

Amendment, as well as the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); *McDonald v. Smith*, 472 U.S. 479, 482–85 (1985); *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989).  Ivester invokes both the First and Fourteenth Amendments as the bases for his access-to-the-courts claim.

For prisoners, meaningful access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Bounds v. Smith*, 430 U.S. 817 (1977), overruled on other grounds by *Lewis v. Casey*, 518 U.S. 343, 354 (1996).  Prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement. *Lewis*, 518 U.S. at 354–55.

There are two general categories of claims of denial of access to the courts.  *See Christopher v. Harbury*, 536 U.S. 403, 413 (2002).  The first category is forward-looking claims which are prospective in nature.  *Id.*  The essence of this category of cases is that official action is frustrating the plaintiff in preparing or filing suit at the present time.  *Id.*  The opportunity to litigate "has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit, and the justification for recognizing that claim, is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.*  The second category is backward-looking claims which are retrospective in nature. *Id.* at 413-14.  These cases do not look forward to future litigation, "but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* at 414 (footnotes omitted).  "The ultimate object of these sorts

13

of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.*

The ultimate justification for recognizing each kind of access claim is the same. *Id.* "Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414-15. The right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. To state such a claim, a plaintiff must describe the underlying, predicate claim "well enough to show that it is 'more than mere hope'" and must identify the lost remedy. *Id.* at 205–06 (quoting *Christopher v. Harbury*, 536 U.S. 403, 416–17 (2002)). A plaintiff must further show that there is no possible remedy for the claimed harm other than through an access-to-the-courts claim. *Christopher*, 536 U.S. at 415 (2002); *Monroe*, 536 F.3d at 205–06. Therefore, a plaintiff must allege an actual injury by identifying a nonfrivolous, arguable underlying claim blocked or lost by the alleged denial of access to the courts. *Id.* To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is "more than mere hope," and it must describe the "lost remedy." *See id.* at 416–17.

In his Amended Complaint, Plaintiff alleges what appears to be a forward-looking access to the courts claim to remove an impediment to his filing of a direct or collateral appeal.[6] The Court previously found that Ivester's original Complaint failed to state an access-to-the-courts claim because he did not specifically identify a nonfrivolous claim he has been prevented from

---

[6] The Court makes no determination about whether the Iowa courts would accept Plaintiff's out of time direct or collateral appeal of his Iowa conviction.

raising or a remedy he has lost. In his Amended Complaint, Plaintiff alleges that he has been denied his right to bring nonfrivolous direct and/or collateral appeal of his Iowa conviction and adds the following allegations about this claim:

> An access-to-the-courts claim is the plaintiffs [sic] only possible avenue for obtaining relief, as without the courts [sic] intervention, the plaintiff will forever be denied the ability to seek relief on direct appeal or in a postconviction relief proceeding based on interference with his communications with his defense counsel, and based on Plaintiff's inability to possess his own legal work pertaining to the felony charges that Plaintiff was accused of in Iowa. Plaintiff was not allowed to speak to his attorney, nor formulate his own defense, as he couldn't even read what he was accused of or research Iowa state law. A state Plaintiff has never lived in or knows anything about.

Plaintiff alleges that he will be unable to bring this challenge to his Iowa conviction unless the Court issues an injunction directing the New Jersey, Iowa, and Oregon Defendants to transfer Ivester to Iowa where he can access Iowa legal materials and court addresses.

As explained below, even assuming that Plaintiff has identified a nonfrivolous claim, his sole claim for injunctive relief fails as to the New Jersey and Iowa Defendants because they have no authority under the ICC to transfer Plaintiff to Iowa. It well established that if the defendants have no power to redress the alleged injuries even if the court were to grant the requested relief, the plaintiff has no case or controversy against those particular defendants. *See Scott v. DiGuglielmo*, 615 F. Supp.2d 368, 374 (E.D. Pa. 2009) (dismissing claims against prison administrators because "they have no way of complying with the requested injunction, if granted") (citing *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir.2001); *see also Snyder v. Millersville Univ.*, No. 07–1660, 2008 WL 5093140, at *12 (E.D. Pa. Dec. 3, 2008) ("In proceeding instead only against individuals who do not have the authority to afford her the desired relief, however, Plaintiff's request for a mandatory injunction necessarily fails.");

15

*Williams v. Doyle*, 494 F.Supp.2d 1019, 1024 (W.D. Wis. 2007) ("[A] claim for injunctive relief can stand only against someone who has the authority to grant it.").

Here, Plaintiff is confined at New Jersey State Prison pursuant to the ICC, under which a prisoner convicted in one state, the "sending" state, may be confined in another state, the "receiving" state. *See* N.J.S.A. § 30:7C–1 et seq.  The ICC is an agreement between states, enacted by statute in each participating state, that authorizes the transfer of one State's prisoner to another State's prison. *See, e.g.*, N.J.S.A. 30:7C–1 through–12. "The purpose of this compact is to provide for the mutual development and execution of such programs of cooperation for the confinement, treatment and rehabilitation of offenders with the most economical use of human and material resources." N.J.S.A. 30:7C–2.  Under the ICC, the receiving state, here, New Jersey, acts "solely as agent" for the sending state, and inmates remain "subject to the jurisdiction of the sending state," which may transfer such inmates at any time. *See* ICC, Article IV(a), (c); N.J.S.A. § 30:7C–5(a), (c).

Indeed, as explained by the Oregon Supreme Court in *Barrett v. Peters*, 383 P.3d 813, 820, 360 Or. 445, 457 (Or. 2016),

> a transferred inmate remains "subject to the jurisdiction of the sending state." ORS 421.245, Art IV, § 3. At any time, the sending state may remove the transferred inmate from the receiving state." *Id.* Thus, although a transferred inmate is in the physical custody of the receiving state, <u>the sending state retains sole authority to remove petitioner from the conditions about which he complains</u>.

*Id.* (emphasis added) (finding that Oregon officials were the proper custodians in a state habeas petition filed by an Oregon prisoner housed in Florida under the ICC).

In addition to the Oregon Defendants, Plaintiff has sued New Jersey and Iowa prison officials who allegedly coordinate out of state transfers, as well as the current and former Administrators of New Jersey State Prison and the Iowa, but neither the New Jersey nor the Iowa

16

Defendants are authorized to transfer Plaintiff to Iowa under the ICC, as Oregon has the sole authority to transfer Plaintiff under the ICC. Because the New Jersey and Iowa Defendants, acting in their official capacities, are unable to provide the only relief Plaintiff seeks, the Court dismisses the Amended Complaint and Plaintiff's claims for injunctive relief against the New Jersey and Iowa Defendants.

As explained above, only the Oregon Defendants responsible for interstate transfers are authorized to transfer Plaintiff to Iowa under the ICC.[7] Plaintiff's Complaint against the remaining Oregon Defendants faces a significant hurdle, however, because he is seeking only prospective and preliminary injunctive relief.[8] Because Plaintiff is a prisoner subject to the PLRA, any prospective injunctive relief provided must meet specific requirements. Specifically, under the PLRA, a district court cannot "grant or approve any prospective relief" respecting prison conditions "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A); *see also* 18

---

[7] The Court does not dismiss the Oregon Defendants for lack of personal involvement, as Plaintiff need not allege that the Oregon Defendants actively participated in the wrongful denial of Iowa legal materials because he seeks only injunctive relief on his access to the courts claims. *See, e.g., Parkell v. Danberg*, 833 F.3d 313, 332 (3d Cir. 2016) ("Our conclusion that the State Defendants lacked personal involvement in past constitutional violations does not preclude [plaintiff's] from obtaining prospective injunctive relief for ongoing violations.").

[8] Plaintiff also seeks preliminary injunctive relief. "A plaintiff seeking a preliminary injunction must establish [ (1) ] that he is likely to succeed on the merits, [ (2) ] that he is likely to suffer irreparable harm in the absence of preliminary relief, [ (3) ] that the balance of equities tips in his favor, and [ (4) ] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Moreover, under the PLRA preliminary injunctive relief also automatically expires "90 days after its entry, unless the court makes the findings required under subsection (a)(1) ... and makes the order final...." 18 U.S.C. § 3626(a)(2); *Victory v. Berks Cnty.*, 789 F. App'x. 328, 332–33 (3d Cir. 2019). The Court need not separately address the preliminary injunctive relief standard as it finds that Plaintiff's request for prospective and preliminary injunctive relief fail under the PLRA.

U.S.C. § 3626(a)(2) (same standard applies to requests for preliminary injunctive relief). Courts have applied this provision of the PLRA in the context of access to the courts claims. *See, e.g., Benjamin v. Fraser*, 264 F.3d 175, 188 (2d Cir. 2001) (applying requirements of the PLRA in case involving violations of access to the courts and Sixth Amendment right to counsel); *Martin v. Ellandson*, 122 F. Supp.2d 1017, 1024 (S.D. Iowa 2000) (finding that "prospective relief at issue was not narrowly drawn, it extends further than necessary, and it is not the least intrusive means necessary to correct the violation of Plaintiffs' right of access to the courts").

Here, even if the Court has jurisdiction over the Oregon Defendants, which is very doubtful, it could not order them to provide the prospective injunctive relief that Plaintiff seeks, *i.e.*, a transfer from New Jersey to Iowa, because this form of relief is <u>not</u> narrowly tailored to correct the alleged violation of Plaintiff's rights, *i.e.*, the denial of Iowa legal materials and Iowa court information, and is certainly not the least intrusive method of correcting the alleged violation of Plaintiff's right to access to the courts.[9] Therefore, the Court also dismisses Plaintiff's access to the courts claim seeking prospective and preliminary injunctive relief against the remaining Oregon Defendants.

In light of his pro se status, the Court will provide Plaintiff with 30 days to submit a Second Amended Complaint with respect to his claim for injunctive relief against the Oregon Defendants if he wishes to seek a narrower form of relief.[10] If Plaintiff submits an Amended

---

[9] Although Plaintiff has chosen to file a federal suit, the Court also notes that there may be other relief available to Plaintiff in the state courts of Oregon. In *Barrett v. Peters*, 360 Or. at 449, cited *supra*, the Oregon Supreme Court held that inmates incarcerated outside of Oregon as the result of transfer under the ICC who allege violations of their constitutional rights are entitled to seek a writ of habeas corpus under the Oregon habeas corpus statute. Or. Rev. Stat. §§ 34.310, 421.245.

[10] The Court denies leave to amend as to the New Jersey and Iowa Defendants. Even if Plaintiff had sought access to Iowa legal materials in the instant suit, it appears that Oregon officials would be responsible for providing those materials to him. Both the Ninth and Tenth Circuits

Complaint against the Oregon Defendants, the Court will consider whether it should sua sponte transfer this matter to the United States District Court for the District of Oregon. *See, e.g.*, *Jolly v. Mitchel*, NO. 19-CV-22082019 WL 2268972, at *3 (E.D. Pa. May 24, 2019) (considering venue *sua sponte* after dismissing certain claims pursuant to 28 U.S.C. § 1915(e) and finding that the remaining claims should be transferred to the Northern District of New York).

IV. **CONCLUSION**

For the reasons explained herein, the Court dismisses the Sixth, First, and Fourteenth Amendment access to the courts claims against Greg Ort as untimely. The Court also dismisses the First and Fourteenth Amendment claims for prospective and preliminary injunctive relief against the New Jersey and Iowa Defendants because they have no authority to transfer Plaintiff to Iowa under the ICC. Finally, the Court dismisses the First and Fourteenth Amendment claims for prospective and preliminary injunctive relief against the remaining Oregon Defendants because the requested relief is not narrowly tailored or the least intrusive means of remedying the alleged violations of Plaintiff's rights, as required by the PLRA. The Court will mark this matter as closed and permit Plaintiff to submit a Second Amended Complaint against the Oregon

---

have held that "[i]n the context of denial of access claims, the general rule imposes upon the sending state authorities the responsibility for ensuring their prisoners incarcerated in sister state facilities are afforded access to state courts." *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006) (citing *Clayton v. Tansy*, 26 F.3d 980, 982 (10th Cir. 1993)); *see also Boyd v. Wood*, 52 F.3d 820, 821 (9th Cir. 1995) (holding that sending state authorities maintain responsibility for providing state legal materials to their prisoners incarcerated in out-of-state facilities). Courts in this district have similarly found that the sending state is primarily responsible for providing legal materials to challenge a conviction in the sending state. *See, e.g.*, *Pellegrini v. Kobus*, No. Civ.A.96–410–GMS, 2000 WL 1876481, at *1-2 (D. Del. Dec. 11, 2000) (finding that California was primarily responsible for assisting a California state prisoner who was transferred to a Delaware state prison pursuant to ICC and that Delaware officials merely bore a responsibility to assist plaintiff in communicating with California officials and to refrain from impeding his receipt of legal material from California). Plaintiff's situation is somewhat unique because he is not challenging an Oregon conviction, but he is nevertheless an Oregon prisoner seeking access to legal materials to challenge a state conviction.

Defendants within 30 days if he wishes to seek a narrower form of prospective injunctive relief.

An appropriate Order follows.

                                                   <u>*s/Freda L. Wolfson*</u>
                                                   FREDA L. WOLFSON
                                                   U.S. Chief District Judge

DATED: December <u>16th,</u> 2022.